Karen L. FARR, Plaintiff-Appellant,

and

Mary E. Green, Plaintiff-Respondent,

v.

Brian K. SCHOENEMAN,
Defendant-Appellant.

Nos. 49232, 49210.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Dec. 24, 1985.

Mary L. Rhodes, Robert M. Clayton, Hannibal, for Karen L. Farr, plaintiff-appellant.

Edward Rex Bradley, Louisiana, for Mary E. Green, plaintiff-respondent.

John W. Briscoe, New London, Herbert A. Parham, Hannibal, for Brian K. Schoeneman, defendant-respondent.

KAROHL, Judge.

Decedent's daughter by a first marriage appeals apportionment of structured settlement in claim for wrongful death of her father. The bulk of the settlement was awarded to respondent's second wife and widow, Mary E. Green. The death resulted from injuries sustained in an automobile collision with defendant Brian K. Schoeneman. Defendant Schoeneman cross-appeals claiming the court erred in ordering interest from the date the structured settlement was approved, March 26, 1984, rather than the later date when apportionment was determined and judgment entered, July 21, 1984.

On April 1, 1983, plaintiff-respondent, Mary E. Green, and her husband, Robert D. Green, were traveling in a vehicle that was struck by an automobile operated by defendant-appellant Brian K. Schoeneman. Robert Green was killed and Mary Green sustained personal injuries. On May 28, 1983, Mary Green filed an action against Brian Schoeneman for wrongful death of her husband and personal injuries. Plaintiff-appellant Farr intervened in the action on September 19, 1983. Subsequently, an amended petition was filed on behalf of Mary E. Green and Karen L. Farr. The petition recognized that Robert Daren Green was survived by his widow and two adult, emancipated children, to-wit: Karen L. (Cashmann) Farr and Gerald L. Green. Gerald Green was not a party but benefited from the apportionment and has not appealed.

On March 26, 1984, the parties presented to the trial court a structured settlement which the court approved and found to have a present value of $321,398.50. This proceeding complied with part of the requirements of § 537.095.3, RSMo.Supp. 1979. What remained was the requirement that "[t]he court shall then enter a judgment as to such damages apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court." On the same day the court approved the structured settlement the court held a hearing to receive evidence from Mary E. Green and Karen L. Farr on the issue of apportionment. At the conclusion of the hearing the court took the matter under advisement and permitted counsel to file suggested findings of fact.

On July 21, 1984, the court made findings of fact, conclusions of law and entered judgment. It ordered the judgment effective "as of March 26, 1984." The approved structured settlement required defendant to pay $150,000.00 cash, $50,000.00 to Mary E. Green at age 65 on June 18, 1989, and $1500.00 per month to Mary E. Green for her life with payments guaranteed until May 1, 1994. The court's duty of apportionment under § 537.095.3, RSMo.Supp. 1979, was satisfied by apportioning the $150,000.00 cash payment as follows: (1) $17,500.00 to Mary E. Green for her personal injuries; (2) cash payments to Mary E. Green of $123,664.02, to Karen L. Farr of $6,417.99, and to Gerald Green of $2,417.99. The judgment also adopted the settlement provisions for monthly payments and the delayed $50,000.00 to the widow.

Plaintiff-appellant Farr claims the trial court erred in apportioning the $150,000.00 because the court failed to comply with the provisions of § 537.095.3, RSMo.Supp.1979. She claims that the judgment does not compensate her for the loss she suffered as a daughter in proportion to the loss sustained by Mary E. Green as a widow. She contends that the widow received 97% of the settlement, over $311,756.00. She also contends that the widow received life insurance proceeds, unpaid employment compensation, inheritance and property as a tenant by the entirety, together with Social Security benefits which should be added to the amount of the settlement and considered by the trier of fact when apportioning the $150,000.00 among the beneficiaries. In her view the award of 97% of the settlement, without regard to the additional sums received by reason of the death of

Robert D. Green, is shocking to the moral conscience, wholly unconscionable and excessive.

There are no Missouri cases interpreting these recent changes in the Wrongful Death Statute which would serve to guide a trial court in a decision of apportionment. Similar statutory provisions for apportionment may be found in at least 15 states. *See* 22 Am.Jur.2d *Death* § 179 f.8 (1985). Some states have adopted statutes of distribution and descent for intestate estates as a guideline. *In Re Badgett*, 226 N.C. 92, 36 S.E.2d 658 (1946); *Mayer v. Mayer*, 119 N.W. 217 (Minn.1909); *Snedeker v. Snedeker*, 58 N.E. 4 (N.Y.E.D.1900); *Murphy v. Duluth-Superior Business*, 174 N.W. 515 (Minn.1937); *Abbott v. Abbott*, 112 Vt. 449, 28 A.2d 375 (Vt.1942).

Appellant Farr acknowledges that § 537.095.3, RSMo.Supp.1979, does not expressly or impliedly state guidelines for the trial court in determining the loss suffered by each person entitled to share damages as are available for apportionment. Appellant Farr suggests that the elements of damage mentioned in § 537.090, RSMo. Supp.1979, present a point of beginning or a first step for the trial court. Under § 537.090, effective in 1979 and before the death of Robert D. Green, the trier of fact is authorized to consider pecuniary losses, the reasonable value of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support. There is no longer an "age of majority" limitation on such loss.

As a second step appellant Farr suggests the trial court should adopt the laws of descent and distribution as the basis of apportionment. Although § 537.095.3 makes no reference to statutes of descent and distribution the preceding subsection, § 537.095.2 directs that a plaintiff ad litem shall distribute any settlement or recovery among those entitled to share in the proceeds "according to the laws of descent unless special circumstances indicate that such a distribution would be inequitable, in which case the court shall apportion the settlement or recovery in proportion to the losses suffered by each person or party entitled to share in the proceeds...." Appellant Farr would have us read the two subsections together and apply the laws of descent and distribution to the present case where the parties were before the court and offered an opportunity to present evidence on the losses suffered by each.

Plaintiff-respondent Mary E. Green answers that the legislature expressly applied the laws of descent and distribution only to plaintiff ad litem wrongful death proceedings and did not adopt that standard where special circumstances indicate such distribution would be inequitable. She argues that on the facts of this case subsection 537.095.3 placed the responsibility on the court without reference to intestate guidelines. On her theory the court properly looked to the evidence and determined the respective losses suffered, apportioned those losses and entered a judgment supported by the evidence. Accordingly, we turn to the facts.

Mary E. Green is 60 years of age. She was married to Robert D. Green two months less than 7 years. During the marriage she was not employed for wages outside of the home, her husband was her sole support. He earned $2700.00 per month. She will receive no retirement benefits because her husband had made other arrangements with his employer. Karen L. Farr is 39 years of age and Gerald L. Green, 37. Mary E. Green sustained obligations for expenses in respect of her husband's death in the approximate amount of $6,000.00 and in respect of her own personal injuries in the approximate amount of $3,500.00. The trial court was assisted by a stipulation of the parties on pecuniary losses which considered hypothetical facts that Robert D. Green survived to retirement at age 65 or to retirement at age 70. The parties agreed that if Robert D. Green retired at age 65 the total pecuniary loss to the three claimants would have been $265,-000.00: $260,164.00 for Mary E. Green, $2,417.99 for each of the children. If Robert D. Green had retired at age 70, the total pecuniary losses would have amounted to

$324,209.94: $314,301.64 for Mary E. Green, $4,954.15 for each of the children. The evidence also disclosed substantial evidence of activities by Robert D. Green in maintaining the family home for himself and his wife.

On the other hand there was no evidence presented from which the court could find that Robert D. Green was disposed to provide any services, consortium, companionship, comfort, instruction, guidance, counsel, training or support for his son, Gerald L. Green. Gerald Green resided in the State of Colorado.

With reference to appellant Farr the decedent resided in northeast Missouri and his daughter, Karen L. Farr, had resided in the area of Springfield, Missouri for a year and a half before the hearing. Prior to that she had lived in Pike County, northeast Missouri. Her mother and father were divorced and her mother is still living. She described her relationship with her father as one of closeness although they were not affectionate. She last saw her father in December of 1982, before his death on April 1, 1983. He remembered her on special days and holidays and offered counsel and advice if she had family problems. She did receive $13,000.00 to $14,000.00 worth of stock and cash by reason of her father's death. In March of 1983 she visited northeast Missouri without contacting her father. For three or four months before his death there was no contact between father and daughter.

■ On the record we find that the apportionment and judgment satisfies the requirements of § 537.095.3, RSMo.Supp. 1979. This finding is not based upon the further fact that Robert D. Green died testate leaving all probate assets to his wife, Mary E. Green. The proceeds of a wrongful death claim are not probate assets and we find no authority that would require the provisions of a will should control or bind the court in its duty to apportion losses between persons entitled thereto under the statute. *See Haynes v. Walker*, 76 S.W. 902 (Tenn.1903), and *McDonald v. Pennsylvania Railway*, 108 F.Supp. 293 (E.D.Penn.1952). We review apportionment under the statute by the same standard in which an appellate court would review damages determined by a trial court and will not interfere unless the verdict is grossly excessive or inadequate, *Dodd v. Missouri-Kansas-Texas Railroad*, 354 Mo. 1205, 193 S.W.2d 905 (1946). The legislature chose to place the duty and responsibility of apportionment of losses in a wrongful death case squarely within the determination of the trial court. We may interfere only if the findings of fact, conclusions of law and judgment are not supported by substantial evidence, or against the weight of the evidence or erroneously declare or apply the law, *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and then only with a firm belief that the judgment is wrong.

■ We do not find plaintiff-appellant Karen L. Farr's argument that the trial court should be guided by the laws of descent and distribution persuasive. The legislature offered this guideline § 537.-095.2, RSMo.Supp.1979, for cases where the plaintiff is a guardian ad litem representing persons who suffered losses but are not before the court. An ad litem is unnecessary where the interested persons are in court. In the present case both the widow and the adult daughter were before the court and their special circumstances were matters of evidence. Considering the elements of recognized wrongful death damages delineated in § 537.090, RSMo. Supp.1979 and the evidence presented by the parties, we find the apportionment of the trial court supported by the evidence. We neither approve nor disapprove of the apportionment. We hold only that the decision of the trial court was within the discretion granted by § 537.095.3, RSMo.Supp. 1979 and the determination of losses made by the trial court is supported by the evidence.

Defendant-appellant Schoeneman contends the trial court erred in decreeing the judgment entered on July 21, 1984, was effective as of March 26, 1984. Particularly defendant claims error in the judgment

because the court ordered interest on the $150,000.00 cash settlement for March 26, 1984 and interest on the $1500.00 monthly payments from May 1, 1984. This position has merit and is sustained.

■ "Interest shall be allowed on all money due upon any judgment or order of any court from the day of rendering the same." § 408.040, RSMo.Supp.1979. On March 26, 1984, the trial court specifically stated it would not render judgment upon the settlement "until such time at the end of the [apportionment] proceedings and make one finding all at the same time." The record does not reflect a judgment was made on the settlement until July 21, 1984. Although the trial court noted, in its ruling denying defendant-appellant Schoeneman's motion to amend judgment on September 17, 1984, that he made an implicit ruling approving the settlement as of March 26, 1984, and that the cause was taken under advisement for the sole purpose of apportionment among the parties, that memorandum fails to validate a prior judgment that was not entered. Rule 75.01; *See Giacolone v., Saitz,* 650 S.W.2d 665, 666 (Mo. App.1983).

The judgment is hereby modified to be effective as of July 21, 1984, the $150,000.00 cash settlement and $1500.00 monthly payment shall bear interest from the date of judgment on July 21, 1984.

The judgment is affirmed as modified.

DOWD, P.J., and CHIST, J., concur.