

# SUPREME COURT OF MISSOURI
## en banc

LOREN MACKE,             )   *Opinion issued July 16, 2019*
                     )
         Respondent,    )
                     )
PAMELA EDEN,           )
                     )
         Appellant,      )   No.  SC97599
                     )
v.                             )
                     )
AUSTIN PATTON,        )
                     )
         Defendant.     )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
**The Honorable Jason M. Sengheiser, Judge**

Pamela Eden appeals the circuit court's distribution of proceeds from Nicklaus Macke's wrongful death settlement, pursuant to §§ 537.080, 537.090, and 537.095.[1]  The circuit court apportioned 98 percent of the settlement to Nicklaus' father, Loren Macke, and 2 percent to Eden, Nicklaus' mother.  Eden's appeal argues the circuit court abused its discretion in overruling her oral motion for a second continuance and erred in apportioning only a small percent of the wrongful death settlement to her.  The circuit court's judgment is affirmed.

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

## Factual and Procedural History

Nicklaus Macke (hereinafter, "Nicklaus") was the son of Pamela Eden and Loren Macke (hereinafter, "Macke"). Nicklaus suffered fatal injuries in a motor vehicle collision with defendant Austin Patton in April 2017. At the time of his death, Nicklaus was 25 years old, unmarried and had no children. Macke negotiated a settlement with Patton's insurance company, and the insurance company offered to pay its $500,000 policy limit in satisfaction of Macke's wrongful death claim against Patton.

Macke accepted the offer and filed for approval and apportionment of the wrongful death settlement in the circuit court of the city of St. Louis. The circuit court scheduled a hearing on the petition for November 21, 2017. Eden, an Alabama resident, first received notice of the hearing date on October 26, 2017.

Mere hours before the first scheduled hearing began, Eden telephoned the circuit court requesting a continuance because she was not in Missouri and did not have an attorney. The circuit court granted a one-week continuance and reset the hearing for November 28, 2017. At the beginning of the hearing, Eden's attorney orally requested a second continuance, asserting the need for discovery and additional time to prepare for the hearing. The circuit court overruled the motion, stating:

> [O]ff the record I denied the request for the continuance, and I'm going to stick with that ruling finding that Ms. Eden had notice and we were kind enough to put it off for a week last week, and I think eventually we just need to go forward with this and I think that needs to happen today, partially due to the issue of the other parties also having to travel into town.

During the hearing, the circuit court heard testimony from Macke, Eden, Macke's sister, Macke's wife and Eden's husband. The evidence supporting the judgment was that

2

Macke and Eden divorced shortly after Nicklaus' birth and Macke was granted custody with supervised visitations for Eden. Macke and Nicklaus moved into Macke's mother's house in Marshall, Illinois, where Nicklaus was raised primarily by Macke and Macke's mother, whom Nicklaus called "Mom."

Though she lived in the area, Eden was absent from Nicklaus' childhood. On occasion, she would show up unannounced to events in Nicklaus' life, including one of his band's concerts, his prom night, and his high school graduation party. But she ultimately played little to no role in his childhood and upbringing.

When Nicklaus turned 18, he moved away from home. Macke stayed in touch with Nicklaus despite the increased distance between them. Eventually, Macke helped Nicklaus move into a St. Louis condominium. Even though Macke lived two and a half hours away from St. Louis, he and Nicklaus remained in touch and Macke visited him regularly.

After the hearing, the circuit court entered an order approving the $500,000 settlement and taking the issue of apportionment and distribution of the settlement amount under advisement. Neither party requested specific findings pursuant to Rule 73.01(c). Several weeks later, the circuit court entered a judgment apportioning $490,000 of the settlement to Macke and $10,000 to Eden. The circuit court's judgment included the following language relevant to this Court's review:

> The court has considered the testimony of the witnesses, the documentary evidence that each submitted to the court, as well as the oral and written statements of counsel. The court, observed first-hand and evaluated the credibility of the witnesses and determined the weight to be accorded to the testimony and documentary evidence of each. This Court has apportioned the settlement proceeds as set forth in Exhibit A hereto, in proportion to the losses suffered by each party, as determined by the court based on the

3

evidence and in keeping with the factors set forth in the Missouri Wrongful Death statute, RSMo. §§ 537.080, 537.090, 537.095.

Eden appealed the judgment, and the court of appeals reversed in part and remanded in a published opinion. This Court granted transfer. Mo. Const. art. V, sec. 10.

## Analysis

Eden presented two separate points relied on in this appeal. The first argues the circuit court erred in overruling her motion for a second continuance. The second argues the circuit court's apportionment of only 2 percent of settlement funds to Eden erroneously applied the law and was against the weight of the evidence.

## Motion for Continuance

In her first point, Eden argues the circuit court erred in overruling her oral motion for continuance, made at the start of the November 28, 2017 hearing. She argues the circuit court abused its discretion in overruling the motion for continuance because she had just retained an attorney that morning and the attorney had no time to conduct discovery or prepare for the hearing.

The circuit court's decision to overrule a motion for continuance is reviewed for an abuse of discretion. *State v. Blocker*, 133 S.W.3d 502, 504 (Mo. banc 2004). The circuit court abuses its discretion "when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Howard v. City of Kan. City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011).

A motion for continuance must be in writing unless the moving party obtains consent from the adverse party to submit an oral request for continuance. Rule 65.03. The motion must also be accompanied by an affidavit "setting forth the facts upon which the application is based[.]" *Id.*

The circuit court did not abuse its discretion in overruling Eden's motion for a second continuance. She orally submitted her motion the morning of the hearing – originally set for a week prior but continued for a week after Eden successfully moved for her first continuance over the telephone. The circuit court's statement in overruling this second motion indicates careful consideration went into its decision. Regardless of when Eden had retained counsel, she had been on notice of the hearing for more than a month and had already been granted one continuance, even though her original motion for a continuance was not in compliance with Rule 65.03.

This second motion for continuance was orally asserted at the start of the hearing, and nothing in the record indicates Macke consented to an oral motion, as Rule 65.03 requires. Further, Macke and his witnesses had all traveled to testify at the hearing, and sustaining Eden's second motion for continuance would have caused further delay and expense. As demonstrated by the record, overruling the second motion for a continuance was not error and certainly not an abuse of discretion.

## Apportionment of Wrongful Death Damages

Eden's second point relied on states as follows:

> THE TRIAL COURT ERRED IN APPORTIONING ONLY A 2 PERCENT SHARE OF SETTLEMENT FUNDS TO APPELLANT INSOFAR AS THE EVIDENCE ESTABLISHED THAT APPELLANT SHOULD HAVE BEEN APPORTIONED A GREATER SHARE OF SETTLEMENT FUNDS.

This point relied on does not suggest an attempt to comply with this Court's requirements in Rule 84.04. Moreover, it does not indicate any consideration of the example point relied on, provided by the Court to ensure compliance with briefing rules:

> The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error* ].

Rule 84.04(d)(1).

As best as can be discerned from the argument section of her brief following the second point, Eden is combining arguments that the circuit court's finding is against the weight of the evidence and that the circuit court erroneously applied the law.[2]

Even if there had been an attempt to comply with Rule 84.04, this would be a multifarious point because it "groups together multiple, independent claims rather than a single claim of error[.]" *Kirk v. State*, 520 S.W.3d 443, 450 n.3 (Mo. banc 2017). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review." *Bowers v. Bowers*, 543 S.W.3d 608, 615 n.9 (Mo. banc 2018). A judgment

---

[2] In response to a question at oral argument seeking to clarify whether Eden's second point relied on was arguing the circuit court erred in weighing the evidence or that the circuit court misapplied the law, her attorney answered that the point relied on was arguing both.

can be against the weight of the evidence while not erroneously applying the law, and vice versa. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). These claims are separate and distinct inquiries, each requiring its own discrete legal analysis. *See Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Nevertheless, this Court exercises its discretion to address the merits of what it can best determine to be the claim of error, *ex gratia*.[3] *Peters v. Johns*, 489 S.W.3d 262, 268 n.8 (Mo. banc 2016).

In reviewing the apportionment of wrongful death damages, "[a]n appellate court will reverse the trial court's judgment only if the ruling is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law[.]" *Parr v. Parr*, 16 S.W.3d 332, 336 (Mo. banc 2000).[4]

---

[3] This Court is exercising its discretionary review *ex gratia* because appellate decisions have strayed from applying the appropriate appellate standard of review for wrongful death settlement apportionment determinations. *See infra*, note 4.

[4] *Parr* is the only opinion of this Court to have added an additional clause to the *Murphy* standard of review: that appellate courts will not interfere with an apportionment unless "it is grossly excessive or inadequate." 16 S.W.3d at 336. This additional text added to the settled standard of review for court-tried cases was borrowed from a short line of court of appeals cases. *See Kavanaugh v. Mid-Century Ins. Co.*, 937 S.W.2d 243, 246 (Mo. App. 1996); *Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324, 326 (Mo. App. 1990). This unnecessary and unwarranted addition to the *Murphy* court-tried cases standard of review traces back to *Farr v. Schoeneman*, 702 S.W.2d 512, 515 (Mo. App. 1985), which cited this Court's opinion in *Dodd v. Missouri-Kansas-Texas Railroad*, 193 S.W.2d 905 (Mo. 1946).

In *Dodd*, this Court was reviewing a circuit court's sustaining of a motion for new trial upon the plaintiff's refusal to accept remittitur ordered by the circuit court. *Id*. at 906. The direct quote from *Dodd*, cited by *Farr*, is: "The question of the amount of damages in cases of this nature is primarily for a jury. Courts should not interfere unless a verdict is grossly excessive or inadequate." *Id*. at 907. While this quote makes sense in the context of remittitur — because a primary issue for review is whether the jury verdict was "grossly excessive" so as to have justified the *circuit court* fixing a lower figure for plaintiff to accept in lieu of ordering a new trial — it has no precedential value in apportioning wrongful death damages, which, by nature, include no challenges to the *amount* of damages but rather determines how those damages should be apportioned among those entitled to the damages. Nonetheless, in *Farr*, the court of appeals took this remittitur-specific language and incorrectly applied it to wrongful death apportionment

After approving the total settlement of a wrongful death action, § 537.095.3 requires the circuit court to apportion settlement proceeds "in proportion to the losses suffered by each *as determined by the court.*" (emphasis added). The class members are not guaranteed a certain amount by virtue of their statutory qualification, nor is the circuit court bound "by a set percentage or a minimum" when distributing settlement proceeds "in proportion to the losses suffered by each." *Parr*, 16 S.W.3d at 337. "[T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned[.]" § 537.090.

When apportioning wrongful death settlement proceeds, the trier of facts is directed to specifically consider:

> [P]ecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to

proceedings under § 537.095.3 without any legal justification or citation to appropriate legal authority. 702 S.W.2d at 515.

Apportionment of wrongful death damages among those entitled, like any other court-tried civil case, historically has been and can be adequately reviewed by applying the facts as found to the applicable law under the *Murphy* standard of review. 536 S.W.2d at 32. To the extent *Parr* and intermediate appellate opinions suggest appellate courts should interfere with an apportionment judgment if it is "grossly excessive or inadequate[,]" those opinions should no longer be followed. The unnecessary and unwarranted addition of this phrase, "grossly excessive or inadequate" in *Farr* also contributed to some appellate court opinions reviewing wrongful death apportionment proceedings under the abuse of discretion standard of review. *See e.g., Wood v. Smith*, 359 S.W.3d 526, 528 (Mo. App. 2012); *Collins v. Hertenstein*, 181 S.W.3d 204, 213 (Mo. App. 2005); *Keene*, 788 S.W.2d at 326 (Mo. App. 1990); *Glasco v. Fire & Cas. Ins. Co.*, 709 S.W.2d 550, 555 (Mo. App. 1986). *Parr* and these court of appeals opinions suggesting a circuit court's apportionment determination is merely reviewed for an abuse of discretion or reviewed for abuse of discretion in addition to the *Murphy* standard of review for court-tried cases should no longer be followed. If it is argued that the manner in which the circuit court apportioned the settlement proceeds is against the weight of the evidence, this Court and the intermediate appellate courts are well-versed in how to apply that standard of review.

attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.

§ 537.090.

Neither party requested specific findings of the circuit court; therefore, all factual findings "shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

### A. The circuit court did not erroneously apply the law

Eden argues the circuit court erroneously considered factors not enumerated in § 537.090 in making its apportionment judgment. As support for this argument, she highlights a single passage in the circuit court's judgment pertaining to the pending settlement's extinguishment of any future wrongful death claims arising from Nicklaus' death and not the apportionment determination.

The argument that the circuit court considered non-statutory factors in apportionment of the settlement proceeds is clearly refuted by the circuit court's judgment, specifically:

> This Court has apportioned the settlement proceeds … in proportion to the losses suffered by each party, as determined by the court based on the evidence *and in keeping with the factors set forth in the Missouri Wrongful Death statute, R.S.Mo. §§ 537.080, 537.090, 537.095*.

(Emphasis added). While the circuit court's judgment contained minimal legal conclusions, it expressly kept its consideration of the evidence of apportionment of

9

damages to the factors set out in § 537.090 and ordered distribution of the settlement proceeds in proportion to the losses it determined each party suffered.

**B.      The circuit court's apportionment was not against the weight of the evidence**

"'[W]eight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Ivie*, 439 S.W.3d at 206. This Court exercises great caution in setting aside a judgment on the grounds it is against the weight of the evidence and "will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id*. Under this test, "[t]his Court defers to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Arbors at Sugar Creek Homeowners Ass'n. v. Jefferson Bank & Trust Co.,* 464 S.W.3d 177, 187 (Mo. banc 2015) (internal quotation omitted). The Court's "role is not to reevaluate testimony through its own perspective." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012).

Eden argues she is entitled to more than a 2-percent share of the settlement proceeds because she "presented credible evidence of a strong and reunited relationship with Nicklaus" and "[p]recedent suggests that a [2-percent] award to a surviving parent would be appropriate only in situations where the decedent is also survived by a dependent child or spouse."

Macke raised Nicklaus and remained in close contact with him through the end of his life. The two spent time together weekly and enjoyed a strong father-son relationship that would have continued, but for Nicklaus' death. Meanwhile, Eden's entire case for her

alleged future loss rests primarily on her status as birth mother, one chance encounter with Nicklaus in 2016, and the communication through social media that followed this encounter. In the context of the § 537.090 factors, the evidence before the circuit court indicates Macke shouldered a significant portion of the loss suffered as a result of Nicklaus' death, and the circuit court's determination reflects that indication.

As the trier of fact, the circuit court "considered the testimony of the witnesses, the documentary evidence[,] … as well as the oral and written statements of counsel." Further, it "evaluated the credibility of the witnesses and determined the weight to be accorded to the testimony and documentary evidence of each." After deferring to its credibility determinations, and then considering the facts as found in accordance with the result reached, the circuit court's judgment was not against the weight of the evidence presented.

### Conclusion

The circuit court did not err nor abuse its discretion when it overruled Eden's motion for a second continuance. Further, the circuit court's apportionment was not an erroneous application of law nor was it against the weight of the evidence. The circuit court's judgment is affirmed.

_____
Zel M. Fischer, Judge

All concur.

11