Carolyn D. PARR, Respondent,

v.

James K. PARR and Madeleine Carr, Appellants.

No. SC 82134.

Supreme Court of Missouri, En Banc.

May 9, 2000.

Douglas R. Horn, Independence, Matthew K. Partin, William C. Partin, Kansas City, for appellants.

Robert A. Henderson, Richard M. Paul, III, Ryan J. Rohlfsen, Kansas City, for respondent.

ANN K. COVINGTON, Judge.

Madeleine Carr (mother) and James Parr (father) appeal the trial court's judgment apportioning settlement proceeds from a wrongful death claim subsequent to the death of their son, James G. Parr, Jr. (decedent). Mother and father assert that the trial court erred in apportioning the proceeds of the settlement because the

award to decedent's wife, Carolyn Parr (wife), was grossly excessive and unsupported by the evidence, while the awards to mother and father were grossly inadequate and unsupported by the evidence and because, in making its apportionment determination, the trial court improperly considered the amount of work performed by wife's counsel in negotiating the settlement. After opinion by the Missouri Court of Appeals, Western District, this Court granted transfer. The judgment of the trial court is affirmed, as modified.

On March 22, 1997, decedent, fifty-five years of age, was riding his motorcycle on Interstate 70. When he began to experience mechanical problems, he pulled onto the shoulder of the road. Another motorcyclist, Ann Bruemmer, who was traveling along Interstate 70, noticed decedent. She slowed her motorcycle and turned onto the shoulder to offer assistance. As Ms. Bruemmer slowed down in the right lane, most of the traffic behind her also slowed. Ronald Blush, who was driving a tractor-trailer weighing in excess of 80,000 pounds, was unable to slow down. Blush's vehicle was traveling at approximately eighty miles per hour. As he approached the slow-moving traffic in front of him, Mr. Blush was unable to control the truck. To avoid colliding with the automobiles in front of him, Mr. Blush veered onto the shoulder. His truck struck and killed decedent.

Decedent was survived by his mother and father, decedent's wife and their two children, Steven Parr and Shannon Chamberlain, and four grandchildren. All of the survivors except the grandchildren are within the class of individuals who are authorized to recover in a wrongful death action under section 537.080, RSMo 1994.[1] On April 15, 1997, wife instituted a wrongful death action against Ronald Blush, his employer, Professional Transportation Services, Inc. (PTSI), and the owner of the truck Mr. Blush was driving when the accident occurred, Trans–Lease, Inc.

The defendants filed a third-party petition against Ms. Bruemmer in which they alleged Ms. Bruemmer's negligence contributed to decedent's death. Mother and father did not intervene in the wrongful death lawsuit, at wife's request. After negotiations, wife settled the wrongful death suit for $965,000.00, $15,000.00 of which was specifically designated to pay a portion of the litigation expenses incurred by wife's attorneys.

On February 19, 1998, wife and the defendants filed a joint motion for approval of the settlement and entry of judgment, as authorized by section 537.095. They asked the court to approve their proposed apportionment of the settlement proceeds. Their motion proposed that wife's attorneys would receive the $15,000.00 amount for litigation expenses, an additional $8,973.88 for litigation expenses, and thirty-three and one-third percent of any recovery for attorneys' fees.[2] Wife and the defendants proposed that decedent's children each receive $20,000.00 and that wife receive the balance of the proceeds after allocations to decedent's children and parents. The parties acknowledged that mother and father had not submitted a request for a share of the settlement, but informed the court that mother and father were represented by counsel. In wife's trial brief in support of the motion for approval of the settlement, she stated that she had no objection to the court's allocating $10,000.00 each to mother and father.

On the same date, mother's attorney entered an appearance and filed suggestions regarding the allocation of the wrongful death settlement. In her motion, mother argued that a parent's loss of a

---

1. All statutory references are to the RSMo 1994.

2. The settlement agreement provides that wife and her attorneys had originally agreed that wife would pay her attorneys thirty-five percent of "any recovery in this wrongful death claim … after the deduction of costs incurred in maintaining the action."

child, even when the child is an adult, is substantial and that a parent is entitled to a fair percentage of a wrongful death settlement. She asserted that, because of her relationship with her son, she was entitled to a seventeen percent to twenty percent share of the settlement proceeds.

The trial court heard evidence on February 20, 1998, regarding the proposed settlement and apportionment. The court on that day took the testimony of decedent's children. Both testified that they had good relationships with their father. They believed that wife should receive most, if not all, of the settlement proceeds. Because wife insisted that they request a portion of the proceeds for the purpose of establishing educational funds for decedent's grandchildren, they requested $20,000.00 per child. Following this testimony, the court continued the hearing to the following week.

During the subsequent hearing, wife testified about her perception of the relationship decedent shared with his parents. She stated that decedent and his father occasionally took motorcycle trips together and that they had been on a motorcycle excursion on the day before decedent's death. She recalled decedent having helped his father to repair rental properties. She described the relationship between the two as good. Wife testified that decedent's mother resided in Texas. She and the decedent had never visited mother there, but mother had visited wife and the decedent in Kansas City on "a couple of" occasions. Wife testified that the decedent had telephone conversations with his mother and that they had a good relationship.

Wife testified about her long relationship with decedent. Wife and decedent had been married nearly thirty-four years. They shared a "wonderful marriage" and the last ten years had been "really quite exceptional." During this time, decedent had worked from their home. Wife testified that since her husband's death, she had trouble sleeping and eating, and she

described her life without him as being "very lonely."

Wife also offered evidence of her economic losses. Decedent's funeral expenses, which wife had paid, were $7,957.24. Decedent had no life insurance. Decedent operated a business in which he restored jukeboxes, sold them, and had them available for rent, along with other 1950s-era memorabilia. Wife believed the business was growing. Wife testified to the range of prices that decedent charged to rent these items. At the time of decedent's death, wife worked at Dillard's, but she and decedent had discussed her leaving that job to become an employee of decedent's business.

At the request of mother and father, the court directed wife to submit income tax returns so that the court could consider those in making its apportionment decision. Wife submitted income tax returns, in accordance with the court's request, for the years 1994, 1995, and 1996.

Wife offered into evidence a report prepared by economist L. Kenneth Hubbell, Ph.D. The economist calculated the present value of decedent's lost business income from the jukebox restoration business, his related rental business, and the present value of his lost household services. The economist determined that the present value of lost business income was $1,211,987.00 and the present value of his lost household services was $88,478.00. After adjustment for self-consumption, the economist calculated that the total adjusted present value economic loss to wife resulting from decedent's death was $1,112,607.00.

Mother and father objected to admission of the economist's report. They contended that in making his calculations, Dr. Hubbell did not rely upon tax returns, journals, or accounting records showing revenues and expenses of the business. Mother and father alleged that the report was based entirely upon the hearsay statements of wife and a customer of decedent's who provided general information regarding

the jukebox restoration business and estimates of the volume of decedent's business. The customer had also assisted the economist in estimating the projected growth of decedent's business. Mother and father contended that the report was not admissible because it was not supported by typical and customary data and the conclusions were unfounded and unsupported by evidence.

Wife responded that the defendants had filed a written stipulation in which they had agreed to the admission of the economist's report "for all purposes," and that the defendants agreed that wife's economic loss as a result of the death of her husband was $1,112,607.00, as determined by the economist. Wife argued that the report was relied upon during the settlement negotiations to establish the amount of the settlement and that mother and father had waived their objections to the report by failing to intervene and object to the report during settlement negotiations. The court overruled mother and father's objections to the report and admitted it, stating that the court would consider counsels' arguments when determining the weight to be given to the report.

Wife further testified regarding her request for allocation of the settlement proceeds. Pursuant to her proposal, $20,000.00 would be allocated to each of her children and $10,000.00 to mother and father, respectively, after which she would receive the net proceeds after paying her attorneys.

Mother also testified. She was seventy-six years old. She had resided since 1985 in Houston, Texas, with her youngest daughter. She was the last person, she said, to talk to decedent before his death. She spoke with him on the telephone to wish him a happy birthday immediately before he departed on his motorcycle. She said that she spoke with him on the phone at least once a month. On two occasions early in the marriage of wife and decedent, they and their children had lived with her in her home. Before her move to Houston, she had frequent contact with her son's family. After her move, decedent frequently sent photographs and sent approximately $100.00 each Christmas. Mother testified that she was seeking a portion of the settlement proceeds for her grief, bereavement, and the loss of her son, but not for any other reason. When asked how much of the settlement proceeds she was seeking, mother testified that she did not know.

Father was hospitalized and not able to attend the hearing. His counsel offered a videotaped statement of father, as well as a letter from John O. Ward, Ph.D., an economic consultant who had reviewed Dr. Hubbell's calculation of the present value of the economic loss resulting from decedent's death. Dr. Ward criticized Dr. Hubbell's calculations and stated his opinion that Dr. Hubbell's methodology was not within the generally accepted practices of business valuation or economic loss calculation in the context of wrongful death. Wife objected to the admission of father's videotaped statement and Dr. Ward's letter on hearsay grounds. After discussion, the court stated that it would either admit all of the parties' hearsay evidence, which included Dr. Hubbell's report, Dr. Ward's letter, and father's videotaped statement, or it would admit none of the hearsay evidence. The court left it to the parties to decide. They agreed to waive their hearsay objections to all of the hearsay evidence, after which the court admitted Dr. Hubbell's report, Dr. Ward's letter, and father's videotaped statement. The court stated that it would consider the hearsay nature of the evidence when considering its weight.

In the videotaped statement, father described his relationship with his son. He stated that losing his son was the most devastating experience of his life and that they shared a loving father-son relationship. They enjoyed the same activities and enjoyed discussing things with each other. Prior to decedent's death, father and decedent saw each other frequently.

Decedent helped father repair his rental properties, and they worked on motorcycles together. Father testified that he felt that he could count on decedent, and that he had designated decedent as the executor of his will. Father did not believe decedent's business would have expanded beyond the level at which it was at the time of decedent's death. Father did not request a specific portion of the settlement proceeds.

Following the hearing, the trial court issued its judgment in which it ordered the distribution of the settlement proceeds as follows:

| | | |
|---|---|---|
| 1. | $ 10,000.00 | to Steven M. Parr |
| 2. | $ 10,000.00 | to Shannon Chamberlain |
| 3. | $ 7,500.00 | to Madeline Carr [Mother] |
| 4. | $ 10,000.00 | to James K. Parr [Father] |
| 5. | $ 8,973.88 | expenses |
| 6. | $313,672.23 | attorney fees to Shugart Thomson [wife's attorneys] |
| 7. | $ 2,500.00 | attorney fees to Partin & Partin [mother's attorneys] |
| 8. | $587,353.89 | to Carolyn Parr [wife] |

Mother and father appealed.

In their first point on appeal, mother and father assert that the award to wife was grossly excessive and that the award of $10,000.00 to each of them was grossly inadequate.

Section 537.095.3 provides that upon the settlement of a wrongful death claim, the trial court shall state the total settlement approved, and "then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court."

■ Section 537.090 provides, in pertinent part:

[T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support[.]

The duty and responsibility of apportionment of losses in a wrongful death action lies within the sound discretion of the trial court. An appellate court will reverse the trial court's judgment only if the ruling is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law, and will not disturb the trial court's apportionment unless it is grossly excessive or inadequate. *Kavanaugh v. Mid–Century Ins. Co.*, 937 S.W.2d 243, 246 (Mo.App.1996).

■ On the record this Court finds that the apportionment satisfies the requirements of section 537.095.3. The award to wife is not grossly excessive to compensate a widow for economic and non-economic damages she suffered as a consequence of the wrongful death of her husband of nearly thirty-four years. With respect to wife's economic losses, she submitted tax returns showing decedent's income. She testified in general terms with respect to her knowledge of the jukebox rental business, including the inventory, the volume of the decedent's business, and the prices decedent charged to rent a jukebox and other memorabilia. Wife further testified that she paid the funeral expenses and that decedent had no life insurance. Wife also submitted Dr. Hubbell's report as evidence of her economic losses.

Mother and father contend that Dr. Hubbell's report was unreliable evidence. Their contention is without merit. Although mother and father initially objected to the admission of Hubbell's report, they later waived their hearsay objections and agreed to admission of the report, provided that the court also consider otherwise inadmissible evidence that they, themselves, offered in support of their case and provided that wife submit tax returns for the years 1994 through 1996. Furthermore, the trial court specifically indicated its ability to refrain from considering information admitted into evidence that it considered to be irrelevant or immaterial, and specifically stated, with respect to receiving Dr. Hubbell's report, that the court

would take into account objections made by counsel insofar as the weight that the court would afford the report.

The court's apportionment to wife was based not only upon her economic losses. The court stated in its judgment that wife had "by far and away the major loss in this case both on an economic and non-economic basis." Wife offered substantial evidence of her non-economic losses. She and decedent had been married for nearly thirty-four years and shared a close and loving relationship. Wife testified regarding the effect of the loss of her husband's companionship and comfort upon her life. This evidence, along with the evidence of wife's economic losses, is sufficient to support the trial court's award of nearly all of the settlement proceeds to wife.

■ The record also supports the award of $10,000.00 to each of decedent's parents. Mother and father assert that the parents of a decedent are entitled to a minimum of fifteen percent to twenty percent of a wrongful death settlement. Their assertions are without basis in Missouri law. There is no minimum amount that must be awarded to any party designated as a taker under section 537.095.4. The trial court is not bound by a set percentage or a minimum; rather, the trial court must exercise its discretion and, as instructed by the statute, distribute the proceeds "in proportion to the losses suffered by each as determined by the court." *See Wright v. Cameron Mut. Ins. Co.,* 908 S.W.2d 867, 868–69 (Mo.App.1995).

■ There is no dispute that decedent's death had a serious effect on his mother and father. The trial court's award, however, is intended to compensate the survivors for their loss. The trial court found that most of mother and father's damages were in the nature of grief and bereavement, which are not compensable under section 537.090. Decedent provided few services to his parents. They presented no evidence of economic loss, nor did they offer any testimony or evidence as to how

much of the settlement proceeds they were requesting. The trial court's apportionment did not underestimate the seriousness of the loss suffered by mother and father; it simply recognized the magnitude of the loss suffered by decedent's wife of nearly thirty-four years. A thorough review of the record reveals that the trial court's judgment is supported by substantial evidence.

In their second point on appeal, mother and father assert that the trial court erroneously declared and applied the law in ruling that the amount of work performed by wife's counsel and mother and father's counsel in the underlying litigation and settlement negotiations was a proper factor for consideration in deciding how much of the settlement proceeds should be apportioned to wife and to mother and father. Mother and father allege that Missouri's wrongful death act does not permit consideration of the amount of work performed by counsel in that the act requires a trial court to base its apportionment to the survivors solely on the factor of the losses suffered by each.

Mother and father's point on appeal disregards the fact that the trial court told counsel for all of the parties that the court was not concerned with their fees. The judgment does not reflect otherwise. Mother and father's point on appeal, as a consequence, rests upon a faulty premise. There is, therefore, no merit to mother and father's claim that the trial court erroneously declared and applied the law.

Mother and father argue before this Court that to find that the trial court did not consider the factor of the amount of work done by counsel is tantamount to holding that wife's attorneys were entitled to take their fee from the entire settlement, not just from wife's share, thereby requiring all survivors to contribute to wife's attorneys' fees. Mother and father further contend, along this line, that such a finding is tantamount to holding that all survivors must contribute to wife's attor-

neys' fees and to reducing the amount of apportionment to mother and father.

Mother and father's argument is without basis. First, finding that the trial court did not consider the work performed by counsel in making its apportionments does not compel a finding that wife's attorneys were entitled to take their fee from the entire settlement or that all survivors must contribute to wife's attorneys' fees. There is no logical connection. Second, nothing in the record or the judgment suggests that the trial court deducted funds from each survivor's share of the general settlement fund to pay the attorneys' fees of wife. Mother and father's point is without merit.[3]

In reviewing the judgment of the trial court alongside the record, this Court observes, *sua sponte*, that, although the judgment of the trial court is supported by the evidence, the court failed to follow some of the provisions of section 537.095 in entering its judgment. As noted above, section 537.090 provides in part: "[T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned...." Section 537.905.3 authorizes the trial court then to "enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court."

After apportionment, subsection 4 instructs the court to order the claimant:

(1) To collect and receipt for the payment of the judgment;

(2) To deduct and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted, or if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances;

(3) To acknowledge satisfaction in whole or in part the judgment and costs;

(4) To distribute the net proceeds as ordered by the court; and

(5) To report and account therefor to the court. In its discretion the court may require the claimant to give bond for the collection and distribution.

As a threshold matter, the settlement agreement presented to the trial court sought the court's approval to distribute $15,000.00 to wife's attorneys for a portion of the litigation expenses incurred and $950,000.00 to all individuals within the class of beneficiaries as delineated by section 537.080. As a consequence, the court should have entered $965,000.00, rather than $950,000.00, as the total amount to be distributed.

Rule 84.14 authorizes a reviewing court to enter the judgment that the trial court should have entered. On the record in this case, this Court is able to amend the

**3.** Mother and father's invocation of *Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324 (Mo.App. 1990), in support of their contention is without basis. In *Keene,* each plaintiff in the wrongful death action was represented by an attorney and had signed a contingency fee contract with his or her attorney. The trial court ordered each survivor to pay one-third of his or her apportioned share of the general settlement fund to the original plaintiffs' attorney, finding that the settlement fund was created through the efforts of the original plaintiffs' attorney. An intervening plaintiff claimed that the trial court erred in ordering him to pay one-third of his recovery to the original plaintiffs' attorney and no compensation to his own attorney. The court of appeals reversed. It rested its holding on section 537.095.4(2), and held that the original plaintiffs' attorney was entitled to be paid fees only from the original plaintiffs' share of the general fund. *Keene,* 788 S.W.2d at 327. This case is entirely distinguishable from *Keene,* where the trial court erred in ordering each survivor to pay one-third of his or her apportioned share of the general settlement fund to the original plaintiff's attorney.

judgment entered by the trial court so as to conform to section 537.095 as follows:

"The only party with any significant pecuniary loss is decedent's wife, Carolyn Parr. Each of decedent's children and both of decedent's parents have suffered substantial non-economic losses. Based on the evidence heard by the Court, a major portion of the damages suffered by decedent's children and parents is in the nature of grief and bereavement, which is not compensable under Missouri law. Carolyn Parr has by far and away the major loss in this case both on an economic and non-economic basis.

Both of the children stated to the Court that they did not wish to receive any part of the settlement but, at the request of their mother would set aside, if granted to them, $10,000.00 for each of decedent's grandchildren. The Court has no authority to apportion any part of this settlement to decedent's grandchildren, although Plaintiff or decedent's children can make such disposition if she or they choose.

Neither of decedent's parents requested a sum certain be awarded to them.

The Court's duty to apportion is undertaken in this case based on the premise that this is not the distribution of an actual determination of damages, but rather is a compromise settlement amount."[4]

The total settlement amount approved is $965,000.00. The Court apportions the sum of the total settlement, in proportion to each individual's loss, as follows: $10,000.00 to Steven M. Parr; $10,000.00 to Shannon Chamberlain; $10,000.00 to Madeline Carr; $10,000.00 to James K. Parr, Sr.; $925,000.00 to Carolyn Parr;

Claimant, for the purpose of this proceeding, Carolyn Parr, shall collect and receive said settlement amount, and is authorized to receipt therefor, and to stipulate for dismissal of this cause;

From the settlement proceeds, claimant shall deduct and pay the expenses of recovery and collection of the judgment to Shughart, Thomson & Kilroy, P.C., in the amount of $23,973.88 ($15,000.00 + $8,973.88);

From the settlement proceeds apportioned to Carolyn Parr, claimant shall deduct and pay to Shughart, Thomson & Kilroy, P.C., as contracted between Carolyn Parr and Shughart, Thomson & Kilroy, P.C.;

From the settlement proceeds apportioned to Madeline Carr, claimant shall deduct and pay to Partin & Partin, P.C., attorneys for Madeline Carr, as contracted between Madeline Carr and Partin & Partin, P. C.;

Claimant shall acknowledge satisfaction for the judgment and costs;

Claimant shall distribute the net proceeds as follows: $10,000.00 to Steven M. Parr; $10,000.00 to Shannon Chamberlain; $7,500.00 to Madeline Carr; $10,000.00 to James K. Parr, Sr., and the remainder to Carolyn D. Parr;

Upon making the payments ordered in this judgment, claimant shall file written receipts, accounting to the trial court claimant's compliance with this judgment.

In conclusion, the trial court did not err in apportioning the proceeds of the settlement.

The judgment of the trial court is affirmed, as modified.

All concur.

---

4. The paragraphs contained within the quotation marks are adopted verbatim from the trial court's judgment.