**Valerie COLLINS, Appellant–Respondent,**

v.

**William HERTENSTEIN, et al; Defendants,**

**Timothy L. Wilson, Sr., Respondent–Appellant.**

**Nos. WD 63898, WD 63943.**

Missouri Court of Appeals, Western District.

Nov. 15, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2005.

Application for Transfer Denied Jan. 31, 2006.

Walter R. Simpson, Michael R. Fletcher, Co-Counsel, Kansas City, MO, for appellant-respondent, Valerie Collins.

Dennis J. Owens, Kansas City, MO, for defendant, Edward L. Pendelton.

David T. Greis, Kansas City, MO, for respondent-appellant, Timothy Wilson.

Lisa S. Morris, Kansas City, MO, for respondents, Hertenstein, Thomas and Keeney.

Before VICTOR C. HOWARD, P.J., JAMES M. SMART and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

This case involves a disagreement between a mother and father over the apportionment of monies under section 537.095 [1] from the successful prosecution of a wrongful death action that arose from the shooting death of their 13–year–old son by Kansas City police officers in November 1998.

There were three separate apportionment hearings in the case. The first occurred in July 2000, two months before trial, and resulted in the interlocutory approval and apportionment of a $100,000 settlement between the parents and one of the defendants in the underlying action. The second occurred in May and June 2003 after the compensatory damages awarded by a jury had been affirmed by this court in *Collins v. Hertenstein*, 90 S.W.3d 87 (Mo.App. W.D.2002). The result of the second hearing was an interlocutory apportionment of the $510,000 compensatory damages award.[2] The third hearing occurred in November and December 2003 and addressed a settlement that was reached regarding the aggravating circumstances damages (punitive damages), which this court had remanded for a new trial. *Id.* at 110. The result of the third hearing was a final judgment as to this $700,000 settlement that also incorporated by reference the two earlier distributions.

Mr. Timothy L. Wilson, Sr., decedent's father, appealing from the circuit court's judgment denying his Motion for New Trial on Apportionment, challenges the procedure by which the settlements and recovery were apportioned, the proportionality of the shares awarded, the awards of attorney's fees and expenses, and the circuit court's failure to award interest on the punitive damages. Ms. Valerie Collins, decedent's mother, challenges the circuit court's decision that allowed Mr. Wilson to re-litigate the issue of his alleged loss as a result of their son's death during the third apportionment hearing. Because we find that there was error (i) in the apportionment procedure, and (ii) regarding interest as to the punitive damages, we reverse in part and remand.

FACTUAL AND PROCEDURAL BACKGROUND

The facts involved in the wrongful death litigation have been fully set forth and will not be repeated here. *Collins*, 90 S.W.3d at 92–94. To better understand the attorney's fee issue, we will note that Mr. Wilson and Ms. Collins, who have never married, together hired a lawyer under a contingency fee agreement immediately after the tragic event that took their son's life.[3] This attorney (father's lawyer) contracted with another law firm within the next month to assist in the case. Before the first apportionment hearing occurred a year-and-a-half later, there had already been a falling out among the parties and counsel regarding trial strategy and disposition of the $100,000 settlement. Ms. Collins terminated her contract with father's lawyer one month before the first apportionment hearing and signed an agreement with the

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. The total amount available for apportionment at this hearing included the compensatory damages award with interest and the $20,000 in court costs that the Board of Police Commissioners agreed to pay.

3. This contract provides the lawyer with "Forty (40%) percent of net (after expenses) *of any sum over Two Hundred Fifty Thousand* ($250,000.00) Dollars and No/00."

firm (law firm) brought in to assist.[4] As part of the agreement between Ms. Collins and Mr. Wilson over the $100,000 settlement, it was understood that Mr. Wilson would withdraw from the underlying litigation before trial.[5] While the underlying case was pending on appeal before this court in 2002, and well over a year before the second and third apportionment hearings occurred, father's lawyer was suspended from the practice of law. Mr. Wilson was represented by different attorneys during the second and third hearings.

Fees and/or expenses were distributed to the attorneys as a result of each of the three apportionment hearings. The sum of $80,000 was set aside for already incurred and future litigation expenses out of the first $100,000 settlement. From what remained, Ms. Collins received $12,000, and Mr. Wilson received $8,000 in accordance with a 60/40 agreement they had entered.[6] Ms. Collins's law firm waived its fees with respect to the distribution of this settlement, so that there would be sufficient funds to bring the case to trial. Mr. Wilson paid his lawyer $2,000, but this was not part of the settlement agreement or the court's apportionment. During the first hearing, Ms. Collins was present to testify as to the nature of her relationship with the decedent as well as the nature of Mr. Wilson's relationship with the decedent.[7] Mr. Wilson, who was incarcerated at the time, did not appear,

---

4. This contract provides the law firm, after trial, with fifty percent of the total amount received. The contract does not provide for the payment of expenses, other than to state that the client "shall not be liable for actual expenses" if there is no recovery. Ms. Collins did testify during the first apportionment hearing that she understood the agreement to mean that attorney's fees would be calculated from the net of the judgment or settlement proceeds, with expenses being paid first. The agreement that the law firm reached with father's lawyer, who was representing both Ms. Collins and Mr. Wilson until just before the first settlement hearing, provided that "Any distribution of fees derived from the above matter shall be divided after all expenses and costs advanced by" the law firm were reimbursed.

5. As a fairly frequent resident of Kansas and Missouri correctional facilities, Mr. Wilson was considered a potential liability should he actively participate in the wrongful death action. His interests as a member of the class that could recover for the child's death were protected, in any event, under section 537.095.1, RSMo (2000). Despite that protection, Mr. Wilson did file a motion to intervene before trial began, which motion was granted. His lawyer subsequently made an oral motion for Mr. Wilson to withdraw during a pre-trial conference, and that motion was granted. Because Mr. Wilson was no longer a named plaintiff, his lawyer participated mainly as an observer during trial.

6. The parties dispute whether this agreement was limited to the first apportionment hearing or was to apply throughout. Given that the court is vested with the discretion to apportion wrongful death damages in proportion to the losses suffered by each party entitled to take a share, any contractual agreements would not be binding on the court under section 537.095.3. The agreement embodies this principle and provides, in relevant part: the parties recognize "that the Court **alone** has the authority to apportion net proceeds of any recovery in this action, and make the following agreement: Valerie Collins will not object to Timothy Wilson, Sr. receiving forty percent of the net proceeds of any recovery (after deduction of attorney fees and expenses) in this action." (emphasis in original). The parties further recognize "that if there is a recovery, the Court will hold an evidentiary hearing and the Court will make an independent decision pursuant to § 537.095 V.A.M.S. as to the allocation of net proceeds of recovery between Valerie Collins and Timothy Wilson, Sr." Any claims, therefore, that Mr. Wilson bases on this agreement are not relevant to our determination in this proceeding.

7. In light of the testimony presented during this hearing, Mr. Wilson did not establish any loss suffered as a result of his son's death.

but his lawyer participated and made no objection to the distribution approved by the court. Nevertheless, Mr. Wilson argues that neither he nor his lawyer waived attorney's fees from this interlocutory approval of the $100,000 settlement.

Mr. Wilson, represented by new counsel, was present for and testified during the second apportionment hearing to distribute the compensatory damages recovery. Mr. Wilson's original lawyer also testified and was represented by counsel. There was vague, conflicting and confusing testimony about when or for how long Mr. Wilson was incarcerated over the course of his son's brief life. But the circuit court recognized that he had spent minimal time with his son and had provided him with minimal necessities and money. The court stated that it did not believe the testimony and evidence showed any kind of emotional bond between father and son. The circuit court did not first apportion the award to Mr. Wilson and Ms. Collins, but divided what was left after setting aside an amount for attorney's fees and expenses. The court awarded nearly $253,000 to Ms. Collins and $1,000 to Mr. Wilson. Attorney's fees of $5,900 were awarded to Mr. Wilson's lawyer who was then under suspension, about $246,000 in attorney's fees was awarded to Ms. Collins's law firm, and about $5,000 was awarded to the law firm for outstanding expenses.[8] The court's intention was to provide father's lawyer with a total of $10,000 in fees, in light of testimony regarding his relatively limited participation in trial preparation and the fact that he had not participated in the trial due to Mr. Wilson no longer being a named plaintiff when it began. There had been testimony that father's lawyer had received $2,100 in fees in addition to the $2,000 Mr. Wilson paid him after the first apportionment hearing. The $2,100 was apparently part of a $5,000 payment for expenses that Ms. Collins's law firm advanced before entering the contract to assist with the litigation.[9] Mr. Wilson did attempt to appeal from the circuit court's interlocutory order making this apportionment award, but his appeal was dismissed for lack of a final, appealable judgment.

On November 21, 2003, the circuit court approved the punitive damages settlement with the defendants in the underlying action, which settlement was paid into a court registry on or about December 15 while the third apportionment hearing was underway. During that hearing, Mr. Wilson was represented by his third attorney. He was allowed, over Ms. Collins's objection, to again present his and others' testimony about the nature of his relationship with the decedent. Mr. Wilson's original lawyer also testified and was represented by counsel. Of the $700,000 available for apportionment, the circuit court awarded Ms. Collins eighty-five percent and Mr. Wilson fifteen percent. Making a rough calculation from the bench, the circuit court estimated that the ultimate percentage awarded to Mr. Wilson from the ag-

---

8. The circuit court's written order as to the compensatory damages recovery apportions Ms. Collins's and Mr. Wilson's shares *after* taking fees and expenses into account. But during the apportionment hearing which preceded this order, the court made virtually the same distribution by starting with the expenses and the apportionment to Ms. Collins and Mr. Wilson, and then, taking into account Ms. Collins's fifty percent contingency fee agreement with her law firm, deducting all of the attorney's fees from her share. Mr. Wil-

son refers to this distribution as a 509:1 ratio, apparently recognizing that the apportionment was made first, and then Ms. Collins's share was reduced by payment of expenses and fees to both parties' lawyers.

9. According to that contract, father's lawyer and the law firm would split the fees 50/50 unless another lawyer was hired to assist, and then the split would be 40/40/20.

gregate of the settlements and recovery available for apportionment was ten percent. From Ms. Collins's share, fifty percent, or about $297,000 was awarded to her law firm in attorney's fees, and she was required to pay eighty-five percent of the outstanding expenses, leaving her with about $292,700. Mr. Wilson's share was reduced by fifty percent for attorney's fees, which was split equally between his original lawyer and Ms. Collins's law firm, with each receiving $26,250. Mr. Wilson's share was further reduced by $840.61, which constituted fifteen percent of the outstanding expenses, leaving him with about $51,600. The awards were formalized in a written judgment dated December 17. The circuit court entered an order on the original defendants' Motion for Order Nunc Pro Tunc on February 26, 2004, to correct omissions in the court's November 2003 order approving the settlement.

In summary, of the $1,310,000 available for distribution, Ms. Collins received $555,822.09 net;[10] Mr. Wilson received $60,659.39 net;[11] the law firm received $569,835.57; father's lawyer received $36,250; and litigation expenses of $90,632.95 were paid.

In his first point, Mr. Wilson challenges his overall 8.7 percent share of the $1.3 million in settlements and recovery as grossly disproportionate, claiming that the circuit court violated section 537.095 by failing to (i) apportion the proceeds between the members of the primary class of statutory beneficiaries before awarding attorney's fees and expenses, (ii) enter a single final judgment that awarded the totality of legal fees and expenses, and (iii) consider the evidence presented during the third apportionment hearing in relation to the interlocutory decisions made after the first two hearings. Mr. Wilson also claims in his first point that section 537.095 requires one assessment of total damages and one apportionment followed by one award of attorney's fees and expenses, and that the court erred in making three attorney's fee awards based on three separate sets of evidence that, he claims, the court refused to consider cumulatively.[12]

In his second point, Mr. Wilson focuses on the attorney's fees and expenses, repeating some of the facts that supported his first point,[13] and concludes that he was required to pay a disproportionate share of the fees and expenses. He also challenges the circuit court's failure to differentiate between fees awarded to father's lawyer pursuant to Mr. Wilson's contract with him and Ms. Collins's contract with him,[14] and pursuant to a quantum meruit theory for services to Ms. Collins after she terminated their attorney-client relationship. He further claims that he should not have paid any fees to Ms. Collins's law firm under section 537.095, because he was always represented by counsel. Regarding ex-

---

**10.** Before fees and expenses, Ms. Collins share was $1,108,000.

**11.** Before fees and expenses, Mr. Wilson share was $114,000.

**12.** During the second and third apportionment hearings, the circuit court indicated that the parties would not be allowed to revisit the earlier awards made. This does not mean, however, that the court did not consider all previous evidence and testimony in making the third apportionment. In fact, just before

apportioning the $700,000 settlement, the court referred to the earlier testimony as a foundation for its decision.

**13.** Point one contains three subparts which are identical to three of the seven subparts of point two.

**14.** As fully discussed *infra*, father's lawyer's contract with Mr. Wilson and Ms. Collins was prematurely terminated as to both and, as such, he was only entitled to a fee award based in quantum meruit as to both.

penses, Mr. Wilson complains that the circuit court's failure to correctly apportion the first settlement resulted in his paying 36.23 percent of the total litigation expenses.

In his third point, Mr. Wilson claims circuit court error in failing to award interest on the $700,000 punitive damages settlement, because there was a delay in payment of the funds into the court's registry after defendants were ordered to do so. Mr. Wilson raises cumulative error in his fourth point, claiming that even if his individual points of error do not warrant a new trial, all identified errors, in the aggregate, do justify the grant of a new trial.[15]

Ms. Collins replies only to Mr. Wilson's first point on appeal and challenges the circuit court's decision allowing Mr. Wilson to re-litigate the issue of his alleged loss during the third apportionment hearing and apportioning a different percentage to him than previously awarded.[16] The defendants in the underlying litigation, Mr. William Hertenstein, Mr. Brian Keeney, and Mr. Troy Thomas, have filed a response to Mr. Wilson's claim that interest is due on the $700,000 settlement.

## STANDARD OF REVIEW

We review the denial of a motion for a new trial under an abuse of discretion standard. *City of Pleasant Valley v. Bak-*er, 991 S.W.2d 725, 727 (Mo.App. W.D. 1999). In a wrongful death action, it is within the circuit court's discretion to apportion the losses, and we reverse the judgment only where it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Parr v. Parr,* 16 S.W.3d 332, 336 (Mo. banc 2000). We will not interfere unless the judgment is grossly excessive or inadequate. *Kavanaugh v. Mid–Century Ins. Co.,* 937 S.W.2d 243, 246 (Mo.App. W.D.1996). Nor do we approve or disapprove the apportionment; rather, we rule on whether the circuit court acted within the discretion granted by section 537.095. *Wright v. Cameron Mut. Ins. Co.,* 908 S.W.2d 867, 868–69 (Mo.App. S.D.1995).

## LEGAL ANALYSIS

### *Apportionment Procedure*

Section 537.095 provides in relevant part:

3. In any action for damages under section 537.080, the trier of facts shall state the total damages found, or upon the approval of any settlement for which a petition or application for such approval has been filed, the court shall state the total settlement approved. The court shall then enter a judgment as to such

---

15. We will not address this point, because we have found an erroneous application of the law as to Mr. Wilson's first two points and are reversing in part.

16. Mr. Wilson's reply takes issue with Ms. Collins's failure to address his second and fourth points on appeal and urges this court to deem her action as a concession on attorney's fees and litigation expenses. While issues not presented in an appellate brief are abandoned and will not be considered by an appellate court, this principle operates differently on appellants and respondents. *Boyer v. Grandview Manor Care Ctr., Inc.,* 793 S.W.2d 346, 347 (Mo. banc 1990). "The respondent's duty is no broader than to support the judgment." *Id.* Ordinarily, the respondent must respond to the points preserved, *id.,* but we have been unable to locate a case, rule or statute that supports the drastic remedy Mr. Wilson recommends. We will consider all properly preserved issues on the merits and will assume that Ms. Collins opposes all points raised, noting that she decided not to address three of Mr. Wilson's points because two of them were "a mere rehashing of the arguments made in Point I," and the third was not directed against her.

damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.

4. The court shall order the claimant:

(1) To collect and receipt for the payment of the judgment;

(2) To deduct and pay the expenses of recovery and collection of the judgment and the attorney's fees as contracted, or if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances;

. . . .

(4) To distribute the net proceeds as ordered by the court; . . .

■ In *Parr* the Missouri Supreme Court established the procedure that the courts must follow in apportioning wrongful death damages under this statute, noting that the apportionment, based on the parties' respective losses, must occur before the expenses and fees, as contracted, are deducted. 16 S.W.3d at 338–39. Under the *Parr* method of apportionment, the court first establishes the total recovery amount and then divides it among those entitled to share in proportion to their losses. In that case, the parents and children of the decedent were each apportioned $10,000, and the decedent's wife was apportioned $925,000. Then the decedent's wife, as the claimant, was ordered to (i) "collect and receive said settlement amount . . . receipt therefore, and . . . stipulate for dismissal of this cause"; (ii) "[f]rom the settlement proceeds . . . deduct and pay the expenses of recovery and collection of the judgment" to her law firm; (iii) from the "settlement proceeds apportioned" to her, deduct and pay to her law firm attorney's fees as contracted; (iv) from the "settlement proceeds apportioned" to decedent's mother, to deduct and pay attorney's fees to decedent's mother's law firm as contracted; (v) acknowledge satisfaction for judgment and costs; and (vi) "distribute the net proceeds" in the amounts of $10,000 each to decedent's father and children, and $7,500 to decedent's mother. *Id.* at 339.

Of the written orders entered after each apportionment hearing in this case, only the final one came close to complying with this procedure, and it did not, on its face, appear to include the totals from the first two apportionment hearings in the calculations.[17] In this respect, we agree with Mr. Wilson that the circuit court violated section 537.095. The circuit court in *Parr* also made a procedural error, but the supreme court, finding no error with the apportionment to the parties, affirmed its judgment, as modified to conform with the statute. *Id.* While we do not believe that the circuit court abused its discretion apportioning the proceeds to the parties, because we have additional issues involving the attorney's fees and expenses and interest on the punitive damages settlement, however, we are unable to simply affirm and modify the judgment.

### Apportionment Ratio

■ Before we address the attorney's fees and other issues, we will address Mr. Wilson's claim that the 91.3/8.7 apportionment was grossly disproportionate because

---

17. As we point out *infra*, the circuit court did adjust the percentage of each party's share after the third hearing to account for the previous awards.

the circuit court followed an incorrect legal standard in making its determination.[18] After carefully reviewing 2,000 pages of apportionment-hearing transcripts, we do not believe that the circuit court applied the wrong standard or abused its discretion in deciding to approximate a 90/10 split between the parents. *See Haynes v. Bohon*, 878 S.W.2d 902, 904–05 (Mo.App. E.D.1994) (court affirms 90/10 split between parents of deceased 14–year–old because child only saw father occasionally, and father's sporadic gifts of money and clothing did not amount to regular support); *Glasco v. Fire & Cas. Ins. Co.*, 709 S.W.2d 550, 555 (Mo.App. W.D.1986) (90/10 split between parents of deceased 12–year–old child upheld "since the evidence showed the father failed to support and maintained only minimum contacts with the child from 1972 until her death in 1984.").

■ The circuit court, which is in the best position to make credibility determinations,[19] considered the time each parent had spent with the decedent, and used that as an approximate measure of the loss each suffered due to the death of their young son under section 537.095. While Mr. Wilson argues that it is the quality of the time spent with the decedent that matters in making a wrongful death apportionment, the testimony reveals that the decedent filled his father's shoes in his mother's single parent household during most of his 13 years, and only spent a limited amount of time with his father during the transitory interludes when Mr. Wilson was not incarcerated. Ms. Collins provided all necessary support to the child, while Mr. Wilson only occasionally gave the child money or paid for some of his clothes or food or activities. Those chores the child did while spending time with Mr. Wilson inured more to the benefit of those relatives with whom Mr. Wilson stayed while out of prison than to Mr. Wilson in his own right.[20] Because the apportionment was not grossly excessive or inadequate, *Kavanaugh*, 937 S.W.2d at 246, we conclude that the circuit court did not abuse its discretion and must affirm its apportionment decision. *Wright*, 908 S.W.2d at 868–69.

In this case, the total judgment was $1.31 million. In total, Mr. Wilson was awarded $114,000 before paying attorney's fees and expenses. This amount is short of a ten percent award;[21] if the circuit court, after reviewing the evidence in the case, confirms that Mr. Wilson should actually have received ten percent of the total, the award should be adjusted.

*Attorney's Fees*

Mr. Wilson claims that the circuit court erred in making three separate apportionments of attorney's fees and expenses and in not considering the cumulative effect of

---

18. Mr. Wilson also argues, without citation to any legal authority, that punitive damages should be apportioned differently from compensatory damages in a wrongful death action, but because he does not raise the issue in his point relied on, we will not consider the matter further. Mo. R. Civ. P. 84.13(a).

19. We give great deference to a trial court's resolution of conflicts in the evidence. *Haynes v. Bohon*, 878 S.W.2d 902, 904 (Mo. App. E.D.1994).

20. While we hesitate to predict the future, based on Mr. Wilson's conduct to date and his inability during his son's life to stay out of prison, we do not believe that he would have been available to benefit from his son's care and guidance for long, sustained and continuous periods of time during the remainder of Mr. Wilson's life.

21. As noted above, the circuit court stated during the third apportionment hearing that Mr. Wilson, according to its rough calculation, would be receiving an overall ten percent share of the recovery.

the evidence to reach a single apportionment and award of attorney's fees and expenses, and that following this procedure affected the share he should have been awarded. Acknowledging that the lawyers involved are owed fees both under contract and in quantum meruit, he further claims that it is impossible to determine on what basis attorney's fees were awarded. He also claims that any errors that affect the fees his lawyer should have received should benefit him rather than Ms. Collins or her law firm.

Ms. Collins fired father's lawyer just before the $100,000 settlement agreement was approved by the court. In *Risjord v. Lewis*, 987 S.W.2d 403, 405 (Mo.App. W.D. 1999), this court stated, "Once termination of the lawyer-client relationship has occurred before completion of a contingent fee contract, the lawyers' only recovery could be in quantum meruit for the benefits conferred." (citation and internal quotations omitted). This principle protects the client who has lost faith in her attorney and would be unable to pay both the discharged attorney at full contract price and someone hired to continue the attorney's work. *Id.* at 406. According to testimony that supports the circuit court's decision to award father's lawyer $5,900 from Ms. Collins's share, this lawyer did some preliminary investigation, served in a mostly consulting capacity, and engaged in considerable client counseling before Ms. Collins terminated his services. The law firm was providing the laboring oar drafting and filing the petition, conducting discovery, taking numerous depositions, handling media communications, and otherwise preparing the case for trial. While

the circuit court did not label the $5,900 award a quantum meruit recovery on Ms. Collins's terminated contract with father's lawyer, under *Risjord*, this was a quantum meruit recovery and is all that Ms. Collins owed.[22] Any objection to this determination was for father's lawyer to pursue, and he has not appealed the circuit court's decision.

As for Mr. Wilson's obligation to his original lawyer, that contract, too, was terminated before completion. The Missouri Supreme Court has ruled that a lawyer's suspension from the practice of law is "equivalent to a voluntary abandonment of his contract of employment," and thus, he cannot recover, even in quantum meruit, for his services. *Kimmie v. Terminal R.R. Ass'n of St. Louis*, 344 Mo. 412, 126 S.W.2d 1197, 1201 (1939). The appeals court in *Pollock v. Wetterau Food Distr. Group*, 11 S.W.3d 754, 772–73 (Mo.App. E.D.1999), however, suggested that, at least where the suspended attorney is seeking to recover attorney's fees from an adverse party and the misconduct is not associated with the case, the attorney should not be precluded from recovering for the reasonable value of his or her services under a quantum meruit theory. The *Pollock* court, although dealing with a distinguishable fact situation, thoughtfully reasoned, on the basis of persuasive case law from other jurisdictions, that a rule to the contrary would "have the unintended effect of retroactive monetary punishment." *Id.* at 773. Such effect, said the court, would run counter to the purpose of disciplinary action, which is to protect the public and not to punish the attorney. *Id.*

---

**22.** Ms. Collins received no services from this attorney and owes him nothing in quantum meruit after June 2000, because (i) her law firm had sole responsibility for the litigation once Mr. Wilson was no longer a named party, i.e., conducting the trial, protecting the compensatory damages award on appeal, and negotiating the punitive damages settlement; and (ii) father's lawyer was suspended from the practice of law and could do nothing after January 2002, before the second and third apportionment hearings.

■ Adopting the *Pollock* approach to attorney's fees for disbarred or suspended attorneys even if recovery is not being sought from an adverse party, we believe that Mr. Wilson's lawyer, suspended for misconduct not associated with the case, is owed at least the value of the services he rendered to Mr. Wilson from the date of engagement in November 1998 until the date he was suspended from the practice of law in January 2002. Mr. Wilson paid him $28,250. The circuit court, on remand, will have to decide, on the basis of testimony already presented, whether that sum represents the reasonable value of services rendered. Those services included initial investigation and trial-preparation consultation before trial, and client consultation throughout. Father's lawyer did not represent a named plaintiff during trial, and there is no testimony that he participated in any meaningful way in the appeal that ultimately affirmed the compensatory damages or in the negotiations as to the remanded punitive damages that led to a $700,000 settlement.[23]

■ As for the attorney's fee that the circuit court ordered Mr. Wilson to pay to Ms. Collins's law firm, this was not error. Mr. Wilson claims that section 537.095.4 only allows the court to order a *non-represented* person to pay attorney's fees to the lawyer representing the named plaintiff in a wrongful death action. Because he was represented throughout the proceeding, albeit by different lawyers, Mr. Wilson believes he should not have to pay anything to Ms. Collins's law firm. Mr. Wilson forgets, however, that his lawyer had a contract with that law firm, and he was represented by it for about a year-and-a-half, before the contractual relationship between father's lawyer and the law firm terminated several months before trial. Thus, the circuit court did not err in ordering Mr. Wilson to pay fees to the law firm from his share. There has been no contention that the amount ordered was unreasonable in quantum meruit; accordingly, this will not be at issue on remand.

*Expenses*

Mr. Wilson claims that he should not have been required to pay 36.28 percent of the litigation expenses, particularly as he was only awarded 8.7 percent of the total available for distribution. We have been unable to locate any case that requires litigation expenses to be split between the persons who can share the proceeds of a wrongful death action in proportion to the awards made for their loss. In fact, the statute requires that "the claimant" deduct and pay the expenses of recovery and the attorney's fees before distributing the net proceeds to those persons entitled to share in the proportion ordered by the court. § 537.095.4(2) & (4).[24] In this case, the

---

**23.** While father's lawyer testified that he had put more than 600 hours into the case before the first settlement hearing, he did not provide any documentation to support this estimate.

**24.** In practical effect, under *Parr*, 16 S.W.3d at 339, while the expenses are deducted by the claimant from the judgment, because those awards apportioned to other persons eligible to share the proceeds remain unaffected by this deduction, the expenses are actually being shouldered by the claimant. We are not entirely certain that this is what

the legislature intended. In cases where the claimant is receiving the lion's share of the award, it makes sense that the claimant should pay the expenses of litigation; but a more even split of the proceeds makes this procedure under *Parr* questionable. If the court were to make a percentage apportionment, the percentage could then be applied to the net proceeds after expenses have been deducted. Nevertheless, with *Parr* as controlling authority, the circuit court will be required to order Ms. Collins to deduct all of the expenses from the total recovery and set-

claimant is Ms. Collins, and while the various contracts between the parties and their lawyers contemplated the satisfaction of expenses before attorney's fees were to be deducted from the parties' shares, there is no agreement regarding how the parties would divide the expenses.

The expenses that were awarded during the first apportionment hearing came off the top of the settlement, and the remainder was apportioned between Ms. Collins and Mr. Wilson. Mr. Wilson claims that the settlement should have been apportioned first, and then the expenses deducted. While Mr. Wilson is technically correct, this was an interlocutory order that could be accounted for and adjusted in the final judgment. Nor did Mr. Wilson object in any way during the first apportionment hearing to the court's approval of this settlement to which he was a signatory. At the time, the proceeds were needed to pay the considerable expenses that were accruing to prepare the case for trial. Mr. Wilson and Ms. Collins had an agreement stating that Ms. Collins would not object to Mr. Wilson receiving as much as a forty percent share, but as stated above, such agreements cannot bind the court under the express provisions of section 537.095.3. Furthermore, had the circuit court complied with section 537.095.3, Mr. Wilson would not have received any of the settlement proceeds from the first apportionment hearing, because the evidence at that time did not support a finding that he had suffered any loss from the death of his son.

■ During the second apportionment hearing, the expenses, although set aside before the proceeds were apportioned between Mr. Wilson and Ms. Collins, effectively came out of Ms. Collins's share because the court had determined that Mr. Wilson was only going to receive $1,000,

and approximately $5,000 in expenses remained to be paid then. The only source to pay the expenses was Ms. Collins's share. During the third apportionment hearing, the circuit court split the expenses between the parties in proportion to the share each was awarded from the punitive damages settlement. Under section 537.095.4(2), this was incorrect. Mr. Wilson should not have been ordered to pay $840.61 in expenses. These expenses are to be deducted by Ms. Collins from the total recovery without thereby affecting Mr. Wilson's award, and the circuit court is so directed on remand.

### Re-litigating Father's Loss

■ Before we consider Mr. Wilson's claim that a fourth apportionment hearing should be conducted, we will address Ms. Collins's claim that the circuit court erred in allowing Mr. Wilson to re-litigate the issue of his loss during the third apportionment hearing. Ms. Collins relies on the *res judicata*/collateral estoppel doctrines to support her claim. *Res judicata* bars the reassertion of a cause of action previously adjudicated in a proceeding between the same parties or those in privity with them. *Jordan v. Kansas City*, 929 S.W.2d 882, 885 (Mo.App. W.D.1996). Before the doctrine can apply, "a final judgment on the merits must have been rendered in the underlying action." *Id.* Similarly, collateral estoppel, or issue preclusion, bars a party from re-litigating any factual or legal issues that were decided by and necessary to a prior judgment. *Galaxy Steel & Tube, Inc. v. Douglass Coal & Wrecking, Inc.*, 928 S.W.2d 420, 422 (Mo. App. S.D.1996). Thus, a final decision on the merits is a prerequisite to the application of this doctrine as well.

tlements on remand without disturbing Mr. Wilson's apportioned share.

■ The circuit court did not render a final decision when the proceeds of the $100,000 settlement and the $510,000 compensatory damages award were apportioned. Each decision was interlocutory and, as to Mr. Wilson and Ms. Collins and their attorneys, subject to a final accounting and apportionment under section 537.095. Thus, it was within the circuit court's discretion whether to admit additional evidence as to Mr. Wilson's purported loss. *Clark v. Mo. & N. Ark. R.R. Co.*, 157 S.W.3d 665, 673 (Mo.App. W.D.2004). Because that issue is not before us, we will deny Ms. Collins's cross appeal.

Regarding Mr. Wilson's request for a fourth apportionment hearing on remand, we have already alluded to the rather lengthy apportionment hearing transcripts in this appeal. As a simple matter of judicial economy, we see absolutely no need for any further evidentiary hearings. In addition, we have already determined on the basis of the hearings conducted to date that the circuit court did not abuse its discretion in apportioning most of the proceeds to Ms. Collins. Because the court's error pertains to the application of law, rather than to any evidentiary issues, it is only the apportionment that must be corrected on remand, and the circuit court can re-calculate that apportionment without considering any additional evidence. § 512.160.3 (in disposing of appeal, "no new trial shall be ordered as to issues in which no error appears."); *see also Gardner v. Mo. State Highway Patrol Superintendent*, 901 S.W.2d 107, 117 (Mo.App. W.D.1995) (purpose of remand is to rectify error that occurred in lower tribunal).

### *Punitive Damages Settlement Interest*

■ Mr. Wilson claims in his third point relied on that section 408.040 requires the payment of interest by the defendants on the $700,000 punitive damages settlement from the day the court signed an order approving the settlement until it was actually paid into the court's registry. Mr. Wilson argues not only that $4,142.40 in interest is owing (representing 9% interest on $700,000 from November 21 to December 15, 2003), but that interest on the unpaid interest has been accruing while that matter has been on appeal and continues to accrue. His argument as to interest on the interest was not raised in his point relied on, however, so we will not consider it further. Mo. R. Civ. P. 84.13(a). Defendants in the underlying litigation contend that the order approving the settlement, because it did not constitute a final judgment, is not subject to the post judgment interest rule. They further argue that interest is not due because the court did not set a date certain for payment of the settlement proceeds into the court's registry.

■ There do not appear to be any cases on point, but the statute itself applies to "all money due upon any judgment or *order* of any court." § 408.040.1 (emphasis added). While the proceeds could not be paid to the parties until after the apportionment hearing, there was a court order requiring that the money be paid into the court's registry. Under the plain meaning of the statute, interest is owed by the defendants from the date the court signed the order approving the settlement and requiring payment of the funds until the check was actually deposited. Mr. Wilson's third point is granted. On remand, the interest will have to be added to the total available for apportionment.

### CONCLUSION

The circuit court incorrectly applied section 537.095 in two respects: failing to make a final overall apportionment in the manner prescribed by the *Parr* court and requiring Mr. Wilson to pay expenses; thus, it abused its discretion in denying

Mr. Wilson's motion for new trial. *City of Pleasant Valley*, 991 S.W.2d at 727. The court did not, however, abuse its discretion in making an approximate overall 90/10 apportionment that reflected the testimony and evidence from three hearings as to Ms. Collins's greater loss. *Wright,* 908 S.W.2d at 868–69.[25] No new evidence is needed, and remand is limited for the court to enter orders consistent with this opinion. In summary, on remand, the circuit court must follow the requirements of section 537.095.4 as interpreted and applied by the supreme court in *Parr* and further (i) should adjust the amounts apportioned to Ms. Collins and Mr. Wilson, if it was the court's intent to make an actual 90/10 split of the total recovery; (ii) determine, on the basis of testimony already adduced whether the amount Mr. Wilson paid to his lawyer was sufficient under quantum meruit; (iii) require Ms. Collins to deduct the $840.61 that Mr. Wilson paid in expenses from the total recovery without thereby reducing Mr. Wilson's award; and (iv) order the payment of interest on the $700,000 punitive damages settlement. Affirmed in part, reversed in part and remanded.

VICTOR C. HOWARD, P.J., and JAMES M. SMART, J. concur.

---

**25.** Mr. Wilson is not correct in claiming that the court did not consider all the evidence and the previous awards in making the final apportionment. The court adjusted the apportionment ratio after the third hearing so that Mr. Wilson would receive an approximate overall ten percent share.