Angela Kay WOOD, Donald Lee Odell
Wood, Robert Allen Wood,
Plaintiffs/Appellants,

Sandra K. Wood, Plaintiff/Respondent,

v.

Kyle A. SMITH and City of Warrenton,
Defendants/Defendants.

No. ED 96141.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 21, 2012.

Lee Elliot, Troy, MO, for Appellant.

Joel D. Brett, Barklage, Brett, Wibben-meyer & Hamill, St. Charles, MO, for Respondents.

D. Keith Henson, Paule, Camazine & Blumenthal, P.C., St. Louis, MO, for Defendants.

KENNETH M. ROMINES, J.

## Introduction

This appeal concerns the apportionment of a wrongful death settlement among Donald Wood's widow and his three children. The trial court did not err in apportioning the proceeds, and the judgment is affirmed

## Facts and Procedural History

Donald Wood ("Decedent") was fatally injured in an automobile accident involving a Warrenton police officer on 14 March 2010. Decedent was survived by his wife of fifteen years Sandra Wood ("Sandra"), 59, and three grown children from a previous marriage: Angela K. Wood, ("Angela"); Robert Allen Wood, ("Robert"); and Donald Lee Odell ("Donnie") (hereafter, collectively referred to as the "Children"). Sandra and the Children collectively agreed to a wrongful death settlement with the City of Warrenton for $376,378. The circuit court approved the settlement on 3 September 2010.

On 3 September 2010 and 8 October 2010, the trial court heard testimony on the issues of apportionment pursuant to § 537.095.[1] Sandra and each of the Children testified at both hearings. The following is a summary of the relevant evidence and testimony.

All the Children are currently adults in their mid to late 30s, and they each live in Tennessee. Donnie has been paralyzed as the result of gunshot wound since 1996. There is no dispute that in the ten years preceding Decedent's death, the Children never visited Decedent in Missouri. There is also no dispute that Decedent only visited Tennessee twice within the ten years preceding his death.

Angela testified that Sandra did not allow Decedent to have a relationship with her, but that Angela and Decedent were close in more recent years. Angela testified that she had only seen Decedent four or five times in the past five years, but that Decedent called to speak with her children nearly every Sunday. She testified that Sandra told Decedent to exclude Angela from a 2002 will and a life insurance policy.

Robert testified that he has not had a good relationship with Sandra for twelve years. He testified that he maintained contact with Decedent from time to time when Sandra allowed. Robert testified that he spoke with Decedent about fishing when Decedent was visiting in Tennessee. He testified that he felt a deep loss when Decedent died. Robert testified that Decedent never saw his grandson (Roberts' child) but that Decedent was planning on visiting again. Robert testified that he only spoke with Decedent five or six times within the past nine years. Robert testified that he was convicted of possession of drugs eleven years ago.

Donnie testified that he has been paralyzed since 1996 when, during an argument, his cousin shot him. Donnie testified that after the incident, Decedent visited him in the hospital but Sandra did not. He testified that Robert helps him. He testified that he had good relationship with Decedent. He testified that Decedent visited him twice in Tennessee.

Sandra testified that the Children did not act like they cared about Decedent while he was alive. She testified that she never told Decedent he could not call or visit the Children. She testified that Angela and Robert had a history of drug problems which made Decedent uncom-

1. Mo.Rev.Stat. § 537.095 (2006).

fortable. She testified that a 2002 will made by Decedent did not provide anything for Robert and Angela. She testified that Angela's daughter was recently in foster care. She testified that she visited Donnie in the hospital after his accident. She testified that she had a bad relationship with Angela and Robert because they treated Decedent poorly. Contrary to Angela's testimony, Sandra testified that Decedent did not talk on the phone every Sunday with Angela or Angela's children.

The trial court issued its findings and judgment on 20 October 2010. The trial court apportioned the settlement proceeds five percent (5%) to Robert, five percent (5%) to Donnie, five percent (5%) to Angela, and eight-five percent (85%) to Sandra. Aggrieved, the Children now appeal.

## Discussion

■ In the Children's sole point on appeal, they argue that the trial court abused its discretion in apportioning the settlement proceeds. The Children argue that in considering nonpecuniary losses, the trial court incorrectly focused on the Children's relationship with Decedent at an earlier point in time, and not from the Children's viewpoint as of the date of Decedent's death. They argue that this led to a grossly inadequate apportionment of five percent each to the Children. For the following reasons, the Children's argument is without merit.

Section 537.095.3 provides that upon the settlement of a wrongful death claim, the trial court shall state the total settlement approved, and "then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court." Section 537.090 provides, in pertinent part:

[T]he trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support.... The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.

■ The duty and responsibility of apportionment of losses in a wrongful death action lies within the sound discretion of the trial court. *Parr v. Parr*, 16 S.W.3d 332, 336 (Mo. banc 2000). An appellate court will reverse the trial court's judgment only if the ruling is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law, and will not disturb the trial court's apportionment unless it is grossly excessive or inadequate. *Id.* We do not reweigh evidence under the abuse of discretion standard. *In re L.J.D.* 352 S.W.3d 658, 662 (Mo.App. E.D.2011).

The trial court found that the Children did not suffer the loss of any financial support as a result of Decedent's death, and the Children do not dispute this finding. The Children focus instead on the trial court's evaluation on nonpecuniary losses such a companionship, comfort, instruction, guidance, training. § 537.090. These factors are all indicative of the strength of the parent-child relationship which itself is appropriate for determining apportionment. *See Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 343 (Mo.App. E.D. 2000).

The Children specifically object to the trial court's finding that "[t]his Court can

only characterize the relationship between Decedent and his children as transitory and one of limited contact or communication." After reviewing the testimony and evidence provided at the apportionment hearings, there is ample support for the trial court's finding regarding the status of the Children's relationship with Decedent.

 When evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). A trial court is free to disbelieve any, all, or none of that evidence. *White v. Director of Revenue*, 321 S.W.3d 298, 309 (Mo. banc 2010). We defer to the trial court on factual issues "because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009).

Viewing the testimony as a whole, it appears that there is conflicting evidence both about the nature of the relationship between the Decedent and the Children at the time of Decedent's death, as well the causes of any strain. Sandra's testimony reflects an estranged relationship and places blame on the Children; the Children's testimony reflects a more positive relationship, at least in recent years, and places any blame for a strained relationship on Sandra. The Children obviously disagree with the trial court's resolution of the evidence to find that the Children's relationship was transient and one of limited communication. But as the trial court was in a better position to make this determination, we should defer to this finding. *Essex*, 277 S.W.3d at 652.

Finally, there is no misapplication of the law. The Children do not dispute the analysis of pecuniary losses, and the minimal relationship between parent and child that is found here does not support awarding much in the way of nonpecuniary losses. The disproportionately low percentage provided to the Children is not inadequate. Therefore, we affirm the judgment of the trial court.

KATHIANNE KNAUP CRANE, P.J. and LAWRENCE E. MOONEY, J., concur.